STATE OF MINNESOTA                              DISTRICT COURT
COUNTY OF ST. LOUIS                       SIXTH JUDICIAL DISTRICT
                                               Case Type: Other Civil

| | |
|---|---|
| Robert Alger, <br><br> Plaintiff, <br><br> vs. <br><br> Wells Fargo Bank, N.A., <br><br> Defendant. | Court File No.: <br> Judge: <br><br><br> **<u>Summons</u>** |

THIS SUMMONS IS DIRECTED TO THE ABOVE-NAMED DEFENDANT(S):

    1. **YOU ARE BEING SUED**. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

    2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS**.  You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

Kazerouni Law Group
120 S. 6th St., Suite 2050
Minneapolis, MN 55402

    3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

Page 1 of 2

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

KAZEROUNI LAW GROUP, APC

Date: December 17, 2020

By:/s/ Anthony Chester
Anthony P. Chester (Bar No. 0396929)
KAZEROUNI LAW GROUP, APC
120 South 6th Street, Suite 2050
Minneapolis, MN 55402
Telephone: (952) 225-5333
Facsimile: (800) 635-6425
Email: tony@kazlg.com

*Attorneys for Plaintiff*

| | |
|---|---|
| **STATE OF MINNESOTA** | **DISTRICT COURT** |
| **COUNTY OF ST. LOUIS** | **SIXTH JUDICIAL DISTRICT** |
| | Case Type: Other Civil |

---

| | |
|---|---|
| Robert Alger, | Court File No.: |
| | Judge: |
| Plaintiff, | |
| | |
| v. | **COMPLAINT** |
| | |
| Wells Fargo Bank, N.A., | |
| | **JURY TRIAL DEMANDED** |
| Defendant. | |

---

## INTRODUCTION

1.    The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information

on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2.      The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.    Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3.      Robert Alger ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"), with regard to erroneous reports of derogatory credit information to national reporting agencies and Defendant's failure to properly investigate Plaintiff's dispute.

4.      Defendant failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

5.      While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6.      Unless otherwise stated, all the conduct engaged in by Defendant took place in Minnesota.

7. Defendant committed each of these violations knowingly, willfully, and intentionally, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

8. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heir, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant named.

9. Through this Complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

## JURISDICTION AND VENUE

10. Jurisdiction of this Court arises pursuant to general state jurisdiction.

11. Plaintiff is an individual residing in the County of St. Louis, State of Minnesota.

12. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

13. Defendant Wells Fargo is an entity doing business in the County of St. Louis, State of Minnesota.

14. Defendant Wells Fargo's registered agent address is: Corporation Service Company, 2345 Rice Street, Suite 230, Roseville, MN 55113.

15. The creditor named herein, Wells Fargo, is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnish information to a consumer credit reporting agency.

16. Plaintiff is informed and believes and thereon alleges that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

17. Plaintiff is informed and believes and on that basis alleges that at all times mentioned herein Defendant was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which Defendant is liable to Plaintiff or the relief prayed for herein.

18. Venue lies with this Court pursuant to Minn. Stat. § 542.01 because that is where the events or omissions giving rise to this action occurred.

### FACTUAL ALLEGATIONS

19. On or about March 20, 2009, Plaintiff incurred a debt with Wells Fargo, with an account number beginning in 7080, related to financial obligations on a mortgage (the "Account").

20. On or about October 31, 2018, Plaintiff filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the District of Minnesota pursuant to 11 U.S.C. § 1301 *et seq.* Plaintiff's case was assigned Case Number 18-50771 (the "Bankruptcy").

21. On or about January 3, 2019, Plaintiff entered into a reaffirmation agreement with Wells Fargo as to the Account (the "Reaffirmation Agreement").

22. Wells Fargo had notice of the Reaffirmation Agreement.

23. Wells Fargo signed the Reaffirmation Agreement.

24. On or about January 11, 2019, Plaintiff filed the Reaffirmation Agreement in the Bankruptcy to reaffirm his obligation to Wells Fargo and exclude the Account from the Bankruptcy.

25. Plaintiff did not rescind his Reaffirmation Agreement with Wells Fargo.

26. Plaintiff performed his obligations to Wells Fargo in accord with the Reaffirmation Agreement.

27. Plaintiff received a discharge in the Bankruptcy on February 6, 2019.

28. Specifically excluded from the Bankruptcy discharge were "Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts."

29. It is illegal and inaccurate for Defendant to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court.

30. However, Defendant either reported or caused to be reported inaccurate information after the Bankruptcy as discussed herein.

### *Metro 2 Reporting Standards*

31.   Defendant's inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards ("Metro 2"), which provides guidance for credit reporting and FCRA compliance.

32.   The Consumer Data Industry Association ("CDIA") publishes Metro 2 to assist furnishers with their compliance requirements under the FCRA.

33.   Courts rely on such guidance to determine furnisher liability. *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation `Discharged in bankruptcy' and with a zero balance due").

34.   On information and belief, Defendant adopted and at all times relevant implemented Metro 2.

35.   On information and belief, Defendant adopted Metro 2 and at all times relevant implemented Metro 2 as an integral aspect of its duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

36.   Despite Metro 2's instructions, Defendant failed to conform to Metro 2 when reporting on Plaintiff's account after Plaintiff filed Bankruptcy as further set forth below.

37.   To this end, the adverse reporting on the Plaintiff's reports departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

***The Impact of Inaccurate or Misleading Information on Consumer Reports***

38.   A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

    i.    credit or insurance to be used primarily for personal, family, or household purposes;

    ii.    employment purposes; or

    iii.    any other purpose authorized under section 1681b.

39.   As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

40.   A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

41.  The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

### *Credit Scoring*

42.  The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/ .

43.  Defendant's departures from the credit industry's own reporting standards and reporting inaccurate and derogatory information has caused Plaintiff to suffer from reduced FICO credit scores.

44.  The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

45.  The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

46.  FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO

score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/ length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

47. Payment history is typically weighted as the most important aspect of a consumer's overall credit score because it shows how the consumer has managed their finances, including: any late payments, how long the consumer has been managing their accounts, when their last payments were made, and any recent charges. *See, e.g.,* https://www.transunion.com/credit-score.

48. A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

49. Inaccurate or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

50. Here, incorrectly reporting the Account as included in bankruptcy with no balance—when it was in fact reaffirmed and paying as agreed—adversely affects Plaintiff's FICO score, as it excludes any recent positive payment

history associated with the Account and it alters the age/length of credit history, and it alters the mix of accounts/types.

51. There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score; i.e., a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

52. Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

### *Defendant's Inaccurate Reporting of the Account on the Equifax Credit Report*

53. In Plaintiff's credit report from Equifax Information Services LLC ("Equifax") dated sometime after February 6, 2019, but before June 4, 2019 (the "Equifax Credit Report"), Wells Fargo failed to report accurate information on the Account.

54. Due to Plaintiff's Reaffirmation Agreement on the Account, Wells Fargo was required to report that the Account was reaffirmed and current or paying as agreed on the Equifax Credit Report.

55.  Instead, Wells Fargo reported the status of the Account as "Account Included in Bankruptcy" on Plaintiff's Equifax Credit Report.

56.  Wells Fargo also reported the remark "Chapter 7 Bankruptcy" on the Account on Plaintiff's Equifax Credit Report.

57.  Wells Fargo further failed to report any recent payment data or balance information.

58.  Through the Reaffirmation Agreement between Wells Fargo and Plaintiff, as well as the subsequent discharge order in the Bankruptcy, the Account was reaffirmed and not included in the Bankruptcy or otherwise discharged.

59.  It was therefore inaccurate for Wells Fargo to report that the Account was included in bankruptcy on Plaintiff's Equifax Credit Report.

### *Plaintiff's Dispute*

60.  On or after June 4, 2019, Plaintiff disputed Wells Fargo's reporting on the Equifax Credit Report regarding the Account pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect and inaccurate credit information.

61.  Plaintiff sent a letter to Equifax requesting the above inaccurate and incorrect derogatory information be updated, modified or corrected as to the Account.

62.  Equifax was required to send notice of Plaintiff's dispute to Wells Fargo, pursuant to 15 U.S.C. § 1681i(a)(2).

63. Upon information and belief, Equifax notified Wells Fargo of Plaintiff's dispute.

64. Upon information and belief, Wells Fargo received notice of Plaintiff's dispute as to the reporting of the Account on the Equifax Credit Report.

65. A reasonable investigation by Wells Fargo would have indicated that it was reporting the Account inaccurately on Plaintiff's Equifax Credit Report.

66. Wells Fargo failed to conduct a reasonable investigation despite being party to the Reaffirmation Agreement, taking payments on the Account after the filing of the Reaffirmation Agreement, and receiving notice of the inaccurate information on Plaintiff's Equifax Credit Report from Plaintiff's dispute letter to Equifax.

67. Instead, in response to Plaintiff's dispute, Wells Fargo re-reported the Account inaccurately to Equifax.

### The Continued Inaccurate Reporting of the Account

68. On Equifax dispute results dated July 11, 2019 ("Equifax Dispute Results"), Wells Fargo failed to accurately report the Account as reaffirmed and current or paying as agreed.

69. Instead, on the Equifax Dispute Results, Wells Fargo inaccurately reported "Account Included in Bankruptcy".

70. Wells Fargo also inaccurately reported Additional Information on the Account as "Bankruptcy Chapter 7".

71.   Wells Fargo further failed to indicate the Account was open, provide any
      recent payment data, or account balance information on the Account.

72.   In fact, in response to Plaintiff's dispute, Wells Fargo reported that the
      "actual payment amount" on the Account was $0.

73.   Wells Fargo's reporting was inaccurate because the Account was not included
      or otherwise discharged in Bankruptcy, but was reaffirmed and Plaintiff was
      still paying on the Account as agreed.

74.   Wells Fargo's failures were egregious in that: (a) Wells Fargo had notice of
      the Reaffirmation Agreement due to Wells Fargo being party to the
      Reaffirmation Agreement, (b) Wells Fargo continued to receive payments on
      the Account after the filing of the Reaffirmation Agreement, thus indicating
      its acquiescence to and knowledge of the Reaffirmation Agreement, and (c)
      received notice of the inaccurate reporting on the Equifax Credit Report from
      Plaintiff's dispute, yet Wells Fargo affirmed the inaccurate reporting of the
      Account to Equifax and caused the Account to continue to report
      inaccurately.

### *Defendant's Failures and Plaintiff's Damages*

75.   Reporting an account was "included in bankruptcy" has no meaningful
      different from reporting that an account was "discharged in bankruptcy"—
      that is, the phrases viewed as having the same meaning. *See Diaz v. Trans
      Union, LLC*, No. 1:18-cv-01341-DAD-EPG, 2019 U.S. Dist. LEXIS 95549,

at *7 (E.D. Cal. June 5, 2019) ("Indeed, many courts considering this very issue have concluded that '[t]here is no meaningful difference between the phrase 'included in bankruptcy' and the phrase 'discharged in bankruptcy.'") (citing *Butler v. Equifax Info. Servs., LLC*, No. 5:18-cv-02084-JGB-SHK (C.D. Cal. Apr. 3, 2019)); *Smith v. Trans Union, LLC,* No. 2:18-cv-13098-GCS-SDD (E.D. Mich. May 10, 2019); *Fleming v. Trans Union, LLC*, No. 2:18-cv-9785-PA-PLA (C.D. Cal. March 8, 2019).

76. It is inaccurate to report an account was included in bankruptcy when the account was instead reaffirmed and not included or discharged in bankruptcy.

77. Reporting that an account was in bankruptcy instead of reporting that the account was reaffirmed is detrimental to a consumer's credit reputation.

78. Failing to report recent payment data and balance information in conjunction with reporting bankruptcy information fives the inaccurate and/or materially misleading impression that an account was discharged in bankruptcy.

79. As evidenced by the inaccurate and/or materially misleading re-reporting on the Account after Plaintiff sent Defendant a detailed dispute identifying the inaccurate information related to the Account, Defendant, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by and in violation of 15 U.S.C. § 1681s-2(b).

80. Defendant failed to review all relevant information provided by Plaintiff in the dispute to Defendant, as required by and in violation of 15 U.S.C. § 1681s-2(b).

81. Due to Defendant's failure to reasonably investigate, Defendant further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681s-2(b).

82. Defendant's continued inaccurate and negative reporting of the Account in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

83. Defendant had actual knowledge of the Reaffirmation Agreement since it was a party to the Reaffirmation Agreement, but chose to inaccurately report that the Account was in Bankruptcy in response to Plaintiff's dispute.

84. Defendant continued to accept Plaintiff's payments after the Reaffirmation Agreement was executed by Plaintiff and Wells Fargo and after Plaintiff received the discharge order in his Bankruptcy.

85. Defendant's acceptance of the Reaffirmation Agreement, knowledge of the filing of the Reaffirmation Agreement in the Bankruptcy, and continued acceptance of payments on the Account indicate that Defendant willfully failed to comply with the FCRA by reporting the Account was in Bankruptcy in response to Plaintiff's dispute.

86. Reckless disregard of a requirement of the FCRA qualifies as a willful violation of the FCRA within the meaning of § 1681n(a). *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

87. Based upon Defendant's knowledge of the Reaffirmation Agreement and continued acceptance of Plaintiff's payments during the Bankruptcy and after, even if Defendant could claim it did not willfully violate the FCRA, its conduct was at the very least done with reckless disregard of its obligations under 15 U.S.C. § 1681s-2(b).

88. Metro 2 specifically instructs that reaffirmed debts should not be reported as discharged in bankruptcy.

89. Rather, according to Metro 2, a reaffirmed debt must be reported as reaffirmed.

90. Defendant's blatant non-compliance with Metro 2 further indicates the affirmation of errors on Plaintiff's credit report after notice of Plaintiff's dispute was willful.

91. Also as a result of Defendant's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including, without limitation, fear of credit denials, out-of-pocket expenses in challenging Defendant's inaccurate reporting, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, and emotional distress.

92. Plaintiff's credit reputation continued to be damaged as a result of Wells Fargo's inaccurate reporting after Wells Fargo re-reported that Plaintiff's Account was in Bankruptcy in response to Plaintiff's dispute.

93. By inaccurately reporting account information, Defendant's acts and omissions have resulted in the illegitimate suppression of Plaintiff's FICO credit score and other credit rating model scores.

94. The adverse effect on Plaintiff's credit score places Plaintiff at the material risk of being denied credit or receiving less favorable credit terms than Plaintiff otherwise would.

95. Defendant's actions and omissions have caused Plaintiff's credit report to falsely indicate that Plaintiff's Account was in bankruptcy, thereby denying Plaintiff the positive effect of the reporting of Plaintiff's payments on the Account over the course of Plaintiff's Bankruptcy and after.

96. Creating the false impression of the Account being discharged in Bankruptcy creates a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's Equifax credit reports engaged in judgment-based lending.

97. The existence of consumer reports which inaccurately report Plaintiff's Account, and/or falsely suggest that Plaintiff's Account has been discharged

in Bankruptcy, make it inherently more difficult and more expensive for Plaintiff to refinance his mortgage.

98. By inaccurately reporting account information after notice and confirmation of its errors, Defendant failed to take the appropriate measures as required under 15 U.S.C. § 1681s-2(b).

### FIRST CAUSE OF ACTION
### THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681 *ET SEQ.* (FCRA)

99. Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

100. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

101. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from Defendant.

102. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or damages of not less than $100.00 and not more than $1,000.00, pursuant to 15 U.S.C. §1681n(a)(1)(A); punitive damages as the Court may allow, pursuant to 15 U.S.C. §1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n(a)(3) from Defendant.

### REQUEST FOR JURY TRIAL

103. Plaintiff is entitled to, and demands, a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendant:

1. A declaratory judgment that Defendant's actions as discussed herein are unlawful;

2. Plaintiff's actual damages;

3. Statutory damages of not less than $100 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), against Defendant;

4. Punitive damages against Defendant, pursuant to 15 U.S.C. §1681n(a)(2);

5. An award of costs of litigation and reasonable attorney's fees against Defendant, pursuant to 15 U.S.C. § 1681o(a)(2) or 15 U.S.C. § 1681n(a)(3); and

6. Any other relief the Court may deem just and proper.

### KAZEROUNI LAW GROUP

Date: December 17, 2020

By:/s/ Anthony Chester
   Anthony P. Chester (Bar No. 0396929)
   **KAZEROUNI LAW GROUP**
   120 South 6th Street, Suite 2050
   Minneapolis, MN 55402
   Telephone: (952) 225-5333
   Facsimile: (800) 635-6425
   Email: tony@kazlg.com

   *Attorneys for Robert Alger*

## ACKNOWLEDGEMENT

The undersigned acknowledges that sanctions may be imposed pursuant to Minn. Stat. § 549.211.

**KAZEROUNI LAW GROUP**

Date: December 17, 2020

By:/s/ Anthony Chester
Anthony P. Chester (Bar No. 0396929)
**KAZEROUNI LAW GROUP**
120 South 6th Street, Suite 2050
Minneapolis, MN 55402
Telephone:   (952) 225-5333
Facsimile:    (800) 635-6425
Email: tony@kazlg.com

*Attorneys for Robert Alger*